We'll hear argument next in No. 055178, Acadia Technology v. United States. Edward, Mr. Ayton, good morning. Let's give everybody a chance to get settled here and we'll give you a moment to get your papers out and so forth. Okay, I think we're ready now. Mr. Ayton for Acadia. Is that the correct pronunciation of your name, by the way? It's Ayton. Ayton. Very good. Thank you. The court below seemed to rush to judgment without heeding the warnings in numerous takings cases that the fact-intensive nature of just compensation jurisprudence argues against the precipitous grant of 12b-1, 12b-4 summary judgment motions. The facts here were not adequately explored by the lower court in order to determine what it was about the government's conduct that justified this extraordinary delay in the wasting asset, nor did the trial judge give adequate attention to the pleadings and the facts pledged in the complaint. Most egregiously, he applied the wrong analytical standards, especially when he talks about the public use and prevention of harm. Could I ask a question just at the outset? Let's say it was accepted that the case was very complex and that it was reasonable for the government to take, whatever, four years to determine, go through the procedural steps necessary to advance the forfeiture. But in any event, that there would be a delay would be deemed reasonable. Would there be a taking under those circumstances, do you think? No. I agree with you. So the taking depends on the unreasonableness of the conduct? Let me put it this way. When someone imports goods, he should expect that customs may look at his entry. He should also expect that customs may open up the box and look at the merchandise. He should expect that some kind of attention will be given to the matter. What he doesn't have to expect is that an ineffective, a ridiculous claim by an outsider, UL, not even a claimed donor, but a certification and an inspection company, with the kind of vague material that appears on pages 14 through 16 of the government's brief in opposition, would by itself and with nothing more result in a delay of altogether six years, four and a half years before they would open up the box. To answer the question more particularly, the ordinary incidence of living in a complex society, especially if you're going to do something that in regular course involves someone looking at your goods, fine. But this judge below should have asked the question, why did the government need four and a half years? What he cites and the classic intersection between those kind of forfeiture cases and takings analysis is a criminal situation where you've got a, obviously an impersonal criminal claim, and you're not going to try your in prosecuting the criminal case. We don't have anything like that here, nor is there the slightest indication that the government ever spent five minutes, five minutes of its own, looking at making a determination whether these goods bore a counterfeit mark. Not five minutes. Brief in opposition, we're at page 51, I think it's paragraph four. All they say- Actually, that's in the blue brief. No, no, no. The government's. It's in the red. The government's brief in opposition. I think it's, no, I'm sorry. It's in the blue. Yeah, I thought so. I apologize. Yeah. Fifty through 51. On page 51, paragraph four, the government says, well, we think, essentially they say, we think that these marks are counterfeit because UL, Underwriters Laboratory, says so. That's all it ever amounted to. They never made an independent determination because, if I can focus your attention on something very, very basic, you've got a fan, a simple fan made by manufacturing. The fan is to be used in a facility that went obsolete a long time ago, but in the early 90s, middle 90s, it was very viable. So you have this fan, you put a simple piece of metal over it, you sell it as a component, and UL has a special mark, a reverse UR for components. So if you're the government and you want to say, is this a counterfeit mark? What you do is you look at the thing, you open up the cardboard, you take out a fan, it's only four and a half, five inches, you unscrew some screws, you look at it, and you see whether there is the name of the manufacturer and a UL mark, a UL, a reverse UR mark. And, of course, the government has our documents showing that the fan manufacturer had a UL authorization. In fact, we didn't argue it extensively in the briefs, but anyone could see from the briefs that the actual underwriters' laboratory approvals are noted in the invoices as part of the package. But that isn't the point. I'm getting too detailed. Mr. Eaton, I have one question. With respect to your stipulated dismissal of the seizure action that was filed by the court, by the government, why didn't you pursue your fees and your cost in that case? Well, of course, there were no costs. Virtually no costs except maybe a filing fee. There must have been some legal fees. No. Well, that perhaps. But here's... That's a good question. I have a wonderful answer for you based upon... You don't charge that much? No, no, no, no, no, no, no. That's not the point. You must charge a reasonable amount for your time? I do charge a reasonable amount. Thank you for inquiring. If you look at Marshall Leasing, a case that we cited repeatedly both in our opening brief and reply brief, it's a Ninth Circuit case. And in the Ninth Circuit, if you want to bring a due process type claim, if you want to get your goods back in circumstances in which the court says, well, you're really doing that in order to set up a stage for an unjust taking case, we're not going to allow you because for that, you've got to go to the claims court. Look at page 1099 of Marshall Leasing, and you've got your answer there. On that page, I'm going to quote from the case, the only value to appellants of the declaratory judgment they seek would have been to serve as res judicata in the claims court where they could obtain money damages. Then the opinion continues citing another Ninth Circuit case in which the court held that it over a claim seeking an order requiring payment to funds improperly deferred, reasoning that the only impact of the equitable relief would be monetary. In other words, once the government gives you back your goods, you go to the Ninth Circuit, you say, well, you know what? I still want to litigate my entitlement. I've got the goods back. Of course, they were worthless by then. They had been worthless for some time. Oh, well, the Ninth Circuit would say, you're just setting us up for a res judicata claim if you win, so that you can run over to the claims court and get a monetary damage. So that wouldn't have worked if I can enlarge upon your claim why I didn't try to get the main issues adjudicated in the district court, Northern District of California, when the government said, here are your goods back. Once you get your goods back, I could have perhaps tried to say, no, I don't want the goods back. I want to litigate. But the court wouldn't have let me litigate that. What about at some early point in this process, you could have gone into the district court and said, I'm going to litigate. No, I couldn't. Well, the Supreme Court says you could. 8850 has a little discussion of this, as you may be familiar with the passage I'm talking about, where they say, and let me just so that we're clear, I think I've actually got the language, a claimant is able to trigger rapid filing of a forfeiture action if he desires it. He can file an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property. So given that the Supreme Court has said you can do it, it seems to me that it's an option that would be open to you, don't you think? May I? May I? May I please respond? Sure. There's a major case, the only case that dealt with our statutory argument is this Computer Towers case, the 10,500 Computer Towers case. And let me tell you that I started out as counsel in that case. And I did just that. Okay. I said, the government wants to wait until it's five years are out, nearly so. We can't wait. I filed a petition to accelerate declaratory relief. Let's get on with it. Hurry up. Well, again, in the Ninth Circuit, they had all the judges submitted an unpublished decision called the Armstrong case, and they all relied on it. And then they all cite this Armstrong case to say, if you've got a government forfeiture case, you can't go into this court and accelerate the government's forfeiture petition. I tried it. I was thrown out of court. Did they address the 8850 language in the Armstrong case? Did you cite it to them? No. They simply said, a forfeiture case like this means that the government must be allowed its time to bring its case, and you can't accelerate it by bringing declaratory action. I was thrown out. Even if it's an unreasonable period of time? Well, of course it was. But we were screaming with them, of course it's unreasonable. It's extremely unreasonable. And what's unreasonable about it also is the tactics that's involved. You've got a wasting asset. Look, suppose this were flowers or tomatoes. Can the government really wait more than a reasonable time before it Hype up the fact and have a commonly acceptable wasting asset. You'll understand what I mean. So I want to get on to this point. Nothing was decided in the Northern District case. The government gave us back the goods, and at that time, the government understood and we understood that the goods were valueless. Everybody understood. They had become valueless a long time ago. The government knew because we had been pestering them. We said, look, we've got licenses. We've got licenses. This is a bunch of baloney. We have licenses. No, no, the government waited. Now, the government chooses sides. It intervenes in a private dispute. I mean, this isn't like a criminal case. Here, the government could choose between UL and us, and at all times, it plumped in favor of UL. We come to this court and we say, well, we didn't get an adjudication before. Now we want unjust taking and decide whatever you have to decide. If it's going to turn out that you have to decide even now whether the marks were good, fine, decide it. But there's an unjust taking here. No probable cause, no forfeiture. And if this judge would simply have explored the facts, he would have seen how unreasonably we were treated and that our only recourse now is to come here. Of course, the government always says, you're in the wrong court. You're always in the wrong court. Go back to the district court. There's nothing to go back to the district court. We want this court, the court below, if this court will agree with us, to allow the record to be made, to explore the facts, to show all the things that support showing how unreasonable the government was from day one until the end. And of course, when the government took this item, when the government's conduct did what it did, it totally deprived us of the value. If the government had at least allowed a mini-hearing, if it had gone to the court and said, well, we've got probable cause, we need more time, whatever, whatever. Mr. Eton, with respect to the Verada case, our Verada case that was issued, saying in effect that if you have administrative and judicial remedies under Title 19, that you're precluded from going to the Federal Court of Claims, how does that apply here? It doesn't. Why not? Because that case specifically says that a specific and comprehensive scheme for administration and judicial review is sufficient to deprive the Court of Federal Claims of jurisdiction over a takings claim arising from a customs forfeiture. And we're bound by that opinion, aren't we? I don't know, and to be perfectly honest, but I'd like to respond as best I can. The customs people have a procedure. They say, you can elect, you can go to court, you can wait and have the matter referred to. Have the matter referred to Federal District Court, or you can leave everything to our discretion. Let me tell you about their procedure. It's no procedure at all. No one in ten years has ever succeeded in that. If you give the matter to customs in a situation where someone says it's a trademark, it's a done deal, their word counts for everything, no right-minded person would go to that procedure. And if we were allowed to present evidence, we would show you that's a sham procedure. I've been doing customs work a long time. I know hundreds of cases. No one in his right mind would go to that procedure. Thank you. I think I've used up my time. You have, but we'll restore two minutes for a rebuttal in the event that you need it. Thank you. You're welcome. Ms. Connealy? May it please the Court. This Court should affirm the decision of the United States Court of Federal Claims dismissing this case because the lower court's Tucker Act jurisdiction to entertain the case was preempted. As this Court has already mentioned, this Court is bound by the Vereda decision. And this Court has firmly held that Tucker Act review is preempted where Congress has provided a specific and comprehensive scheme for administrative and judicial review of the claim in another form. Before addressing the merits of this claim, I think the issue has to be addressed whether the Court of Federal Claims actually had jurisdiction to entertain this claim in the first place. Judicial review of seizures and forfeitures... Ms. Connealy, what if the administrative and judicial program which is established, as Mr. Etan points out, is not really very effective? Well, Your Honor, I don't believe that effectiveness is an exception to the rule that if a specific and comprehensive scheme for administrative and judicial review of the claim has been delegated to another forum, there's no exception for effectiveness. What about due process? Well, first of all, Your Honor, two things about Acadia's due process claims. First of all, they voluntarily dismissed their due process claims before the lower court. And the Court of Federal Claims does not have jurisdiction to review due process claims because the due process clause is not a money-mandating provision. But aside from that, if in fact the Congress does establish a process that says you can go through the administrative agency and then you can go to district court, but for the past 50 years anyone who's tried has not been successful, is that really providing due process for the particular parties at that point? Your Honor, I think that would depend upon the particular facts of certain circumstances. Let's assume that no one's ever been successful under the procedures. I don't think there it can just be inferred that there's a due process violation or somehow due process is not, that there's no due process by the scheme that's been laid out based upon the fact that 50 people or so have not been successful. I think it would depend upon the circumstances of those cases.  has been quite diligent in bringing their forfeiture proceeding cases and only bringing cases which they've ensured have probable cause and certification marks that they have ensured are indeed counterfeit. Perhaps Customs has only brought cases in all those 50 cases that they had a strong case, and that's why they haven't been successful. I don't think it necessarily can be inferred that there's no due process. Does Congress have the constitutional ability to select one route over another to provide for a takings type of a process? They say you can take it to the district court, but you can't take it to the Court of Federal Claims. Can they do that? Yes, they can do that, Your Honor. I believe that they have done that in a number of statutes where they specifically delegated jurisdiction over certain types of claims in one court, and that's where it should be heard and not in the claims court. I think that an issue here is that in order for Acadia's takings claim to be successful, it has to be determined that Customs' seizure was a mistake or improper, and that's a determination that has to be made by the district court. Well, but if they're claim is broader than that, they would say, I think, that it isn't necessarily predicated on the unlawfulness of the initial seizure, but the possession for an unreasonable period of time of the goods without regard to whether the initial seizure was lawful, although they do claim that the initial seizure was unlawful. I think both elements are part of their claim. Don't you understand it that way? I do, Your Honor, and if I could address the unreasonable delay. Well, go ahead, and then I have a question at the end. All right. In this case, Acadia alleges that there was an unreasonable delay, but under the statute, Customs has up to five years to determine whether or not to initiate a forfeiture proceeding. In this case, Customs decided to initiate a forfeiture proceeding within four years. The parties then entered into a stipulation a year later dismissing the case, together with each party to bear its own fees and costs. So in terms of Acadia's argument that there was an unreasonable delay, there was no unreasonable delay here. And Acadia's argument that there's no evidence that the government spent even five minutes determining whether the seizure would be proper or not, that's just entirely not true. I mean, I'm aware of the facts that the agency's attorneys even went down to the warehouse, I believe with Acadia's counsel, to look at the products. And this wasn't an easy case where it was just one component, one product, where it could just be examined whether or not the U.L. marks were appropriately placed there. My understanding is that these products were multiple components, and maybe one component had the authority to use the U.L. mark. But that component attached to another component may not have the authority to use the U.L. mark. But all of these are arguments that are not really part of the case as it comes to us now, as I understand it. I mean, I think that given the posture of the case, you have to take the case on the assumption that the four years of delay was simply inexcusable and unreasonable delay as a matter of fact. And your argument has to be that notwithstanding that assumed fact, you still win the case, correct? I mean, you can't come to us now and say, well, it was justified delay, because that's not part of the case as it came up to us on the trial court's ruling, as I understand it. That's correct, Your Honor. You're correct in that the trial court never made a ruling as to whether the delay was reasonable. So as far as the trial court was concerned, you win this case even if this is outlandish conduct by the government in delaying. We win the case in the sense that the Court of Federal Claims did not have jurisdiction in the first place to review. That's your contention. That's correct, Your Honor. Without regard to any of the circumstances that you've just been discussing. In terms of our jurisdictional argument, yes. But in terms of ‑‑ I guess I would just like to address what you've been discussing regarding an unreasonable delay that has to be taken as true that there was an unreasonable delay. I think that to find that would contradict the statute that allows customs five years to determine whether or not to bring a forfeiture. Well, statutes of limitations don't constitute, if I understand them, a congressional finding that in all cases the delay up to the date that the statute of limitations expires is, as a matter of law, reasonable. You could have ‑‑ the statute of limitations is generally there to give you an outside limit so that in the most difficult case five years may be a permissible period. That doesn't necessarily mean that in the simplest case where one could simply look at the product and in three minutes determine whether it was forfeitable or not, that one could delay for four years and 353 days and that would be fine. You wouldn't be making such an argument, right, with respect to a delay that was unjustifiable on any ground other than that the forfeiture proceeding was filed within the statute of limitations. I think that a number of factors would have to be taken into account. Right, but the statute of limitations wouldn't terminate the question of reasonableness, would it? I mean, I think the 8850 and von Neumann cases stand for that proposition, surely. I think you're correct, Your Honor. So the statute of limitations argument kind of goes by the board, right? Right. Well, I think that it's definitely a factor that should be weighed towards the reasonableness. Okay. Now, as far as what in the statutory structure here gave Acadia the opportunity to go to another court other than the Court of Federal Claims prior to the actual forfeiture, let's say. Prior to the initiation of the forfeiture proceeding. Right. They had been four, four and a half, whatever, years with their goods sitting in a warehouse somewhere. And your argument is, in part, that there's this statutory structure that commits to another tribunal the authority and the responsibility for deciding these questions. Where should they have gone, in your view? Where they should have gone, Your Honor, is if they believe that the seizure was improper, they should not have entered into the stipulation. The day before the stipulation. The day before the stipulation. Let's say, or the day before the forfeiture was filed. Let's start there. Where should they, what was their remedy? I think their remedy was laid out in the letter that was sent to them regarding Correct, Your Honor. Well, a remission is a, as you know, is just an optional remedy that customs can say, nope, denied, and that's it, as I understand it. What judicial remedy did they have other than the grace of customs through remission? I think that their only judicial remedy would have been to proceed with the forfeiture action. But, no, they can't proceed with a forfeiture action. It's the government that does the forfeiting. Right. What could they have done? If the government had moved to dismiss the forfeiture proceeding, No, no, we're back at the pre-forfeiture, before the forfeiture is filed. The government holds on to the goods. The government seizes the goods, and they hold them for four and a half years. During the course of that four and a half years, Acadia says, when is this ever going to end? How do we get our goods back? What do they do? What is the government's position as to what they should have done under this judicial scheme that you say trumps the Court of Federal Claims remedy? I don't know the answer to that, Your Honor. I don't know if they could have sought some kind of a declaratory judgment in district court to determine whether the forfeiture was proper or not. I don't have an answer to that. My answer would be that one of the things that could have been done would be for Customs, as they did in this case, to properly have brought these forfeiture proceedings. But that's Customs' choice, not Acadia's choice. The question is what Acadia could have done. I mean, you're basically saying, I mean, I'm not sure you're right in saying that they were stuck because there is language in a couple of Supreme Court cases that says they can go into district court and they can ask for a ruling from the district court that the holding of the goods is unreasonable. Now, I mean, does the government, well, I guess, I don't want to put you on the spot, hitting you with that, but the government. The government wouldn't disagree with those cases, Your Honor. I'm just not aware of those cases at this point standing here before you. But if that is what the cases hold, then that would be Acadia's recourse to have done that, to have followed that procedure. As stated before, Your Honor, Acadia had the opportunity to adjudicate this claim in the district court. The government initiated a forfeiture proceeding in the district court within four years of seizing the cooler fans. And as I've stated before, that this was well within the statutory deadline of five years. In addition, the district court never reached the merits of whether the government seizure of Acadia's cooler fans were proper or whether Acadia was entitled to compensation. And that's a question that cannot be answered by the Court of Federal Claims. That's something that jurisdiction specifically lies within the district court. Could Acadia have gone to district court under the Federal Torts Claims Act after they got their product back? Your Honor, they may have been able to go to the district court alleging a tort under perhaps an exception under the Torts Act. Contrary to Acadia's arguments, the government... They were deprived of the use of the property for four and a half, five years? It's true, Your Honor, that the way Acadia has worded their claims, their claims do sound in tort. And that was another one of our arguments, that the court did not have jurisdiction to review Acadia's claims because they did sound in tort. So you're saying that they could have gone under the Federal Torts Claims Act in federal district court? We're not... The government is not saying that Acadia has a tort claim that they may bring in the district court. What the government is saying that their claims do sound in tort, and if the Federal Torts Claims Act allows some kind of an exception that would allow them to bring their claim, then yes, they would have that recourse. Okay. Anything further? No. For these reasons, the decision of the United States Court of Federal Claims should be affirmed. Very good. Thank you, Ms. McClain. Mr. Eitan, you have two minutes. Federal Tort Claims Act, we quoted the apt language. I can't imagine anything clearer in the English language in the statement that says, no customs official, no officer of the United States, no agency is going to be held liable for detention of goods. We've scanned the case law that's been discussed in our briefs. We know of no case where the Federal Tort Claims Act, in its clear exception to customs, has accommodated what's essentially damages for the lost goods. Our remedy, in part because there's no such Federal Tort Claims Act provision, is to come here. And that's what we've done, and we've argued in our brief. I would emphasize it now. The Congress has never said when it legislated in the Federal Tort Claims Act an exception for customs. Delay customs, you're out. It's never said, and you can't go through Tucker Act to a claims court to get an unjust taking. Look, if it had said that, we'd have trouble. But the default court is the court below. This court, the court below. When other avenues, like the Federal Tort Claims Matter legislation, is unavailable by explicit congressional legislation and no other prohibition, we come here. Default place. One last comment. I was asked about Vereda. I just noticed, as opposing counsel was arguing, Vereda came out in 2001. Our goods were seized in 1997. It's great. And one final point that I propose, that the customs regs say, as part of their regs, they don't say, come here, we'll give you a quasi-judicial whatever. Their regs say, you leave it to our discretion, and we allow you, if you make a written demand and say you're going to pay costs in the district court, to go to court. And that's what we did. Thank you. Thank you, Mr. McDonough. Ms. Condigley, thank you. The case is submitted.